# Commonwealth *v.* Cotter, Appellant.

*Criminal law—Conspiracy—Corporations—Manipulation of stock.*

1. A conviction for the crime of conspiracy will be sustained, where the evidence tends to show that the defendants organized, first, a finance company, and after this an insurance company, without contribution of capital by themselves, and that they manipulated the subscriptions to the stock of the insurance company through the machinery of the finance company as so to realize to themselves a large amount of money, and to bring about an almost immediate collapse of both corporations.

2. In such a case the court committed no error in refusing to admit

in evidence a voluntary statement of persons selected by some of the subscribers to the stock of the insurance company, exhibiting the assets and liabilities as far as the project had been advanced.

Argued Oct. 8, 1913.  Appeal, No. 122, Oct. T., 1913, by defendant, from judgment of Q. S. Berks Co., Sept. Sessions, 1911, No. 37, on verdict of guilty in case of Commonwealth v. William J. Cotter et al.  Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.  Affirmed.

Indictment for conspiracy.  Before ENDLICH, J.

The facts are stated in the opinion of the Superior Court.

Verdict of guilty, upon which judgment of sentence was passed.

*Errors assigned* were various rulings on evidence and instructions.

*Oliver Lentz* and *William T. Cooper*, for appellant.

*Harvey F. Heinly*, district attorney, with him *R. G. Bushong* and *Samuel E. Bertolet*, for appellee.

OPINION BY HENDERSON, J., February 20, 1914:

The appellant and Leo D. Jacoby were convicted on a charge of conspiracy to defraud a corporation promoted by them known as the Citizens Life Insurance Company and certain subscribers to the stock of that company.  The argument presented on the hearing of the appeal relates principally to the contention that the evidence is not sufficient to sustain the judgment.  This evidence is voluminous and covers a considerable part of the history of the activities of the defendants in connection with the formation of the company and includes numerous exhibits.  Much of it is not disputed or so clearly established as to warrant the conclusion that it could not be successfully overcome.  It appears that the

appellant was the principal actor in the project of organizing the insurance company and that as a preliminary step in that enterprise a corporation was formed in the state of Delaware called the Reading Finance & Securities Company with an authorized capital of $100,000, of which the appellant was the president. The object of the organization of this company was the promotion of the insurance company thereafter to be incorporated. Jacoby, the other defendant tried with the appellant, was one of the promoters of the Citizens Life Insurance Company and, on behalf of his associates proposed that a contract be entered into between the said promoters and the Reading Finance & Securities Company under which the latter company would subscribe for the entire stock of the insurance company not sold to others within three years, the price to be paid being $15.00 per share for 20,000 shares; $20.00 per share for 10,000 shares and $25.00 per share for 20,000 shares. As a consideration for this undertaking the finance and securities company was to receive twenty-five per cent of the subscription price on all the stock sold and was also to act as the general agent of the insurance company for twenty years at a reasonable compensation to be thereafter agreed on. This contract was approved by the appellant and others acting in the name of the finance and securities company and capital stock of the latter company to the amount of $49,500 was issued to the appellant; forty-seven shares were issued to McCormick and three shares to Steigler, the last two named being the incorporators with the appellant of the Reading Finance & Securities Company. The testimony would indicate that the shares of the latter were transferred to the appellant thus giving to him in connection with other shares held by him a majority of the stock of the company. The evidence does not disclose the fact that any money was paid by either of the incorporators of the finance and securities company for the stock so issued to them. Up to this

time the insurance company had not been incorporated.
After this the appellant and the other promoters of the
insurance company took steps to secure a charter for
that company and subscribed for a large amount of the
proposed stock.   Cotter gave notes to the amount of
$150,000 for stock subscriptions.   Other subscriptions
made by Jacoby, Whitfield and Dardine were also paid
by notes.   Agents were employed to solicit subscriptions
from those not concerned in the prosecution of the plan
and the total subscriptions to the stock amounted to
$362,377.50.   These subscriptions were taken through
the finance and securities company which deducted a
commission of twenty-five per cent therefrom in accord-
ance with the contract above referred to.   From these
stock subscriptions $96,900 in cash came into the pos-
session of the finance and securities company.   Of this
amount $33,000 was turned over to the insurance com-
pany.   The balance was used up in the payment of
dividends and expenses by the finance and securities
company.   The business had not progressed far before
difficulties arose which culminated in the appointment
of a receiver for each of the companies and thereafter
came the prosecution of the appellant and other pro-
moters of the companies for the fraud alleged to have
been perpetrated in the manipulation of the funds paid
by subscribers for stock of the insurance company.   A
careful examination of the material testimony discloses
a state of facts from which inferences could legitimately
be .drawn by a jury unfavorable to the defendants and
which would logically lead to a verdict of guilty.   They
contended at the trial that they acted in good faith·
and with the expectation that the enterprise would
result in advantage to the subscribers to the stock of the
insurance company as well as in profit to themselves and
this may have been their motive and purpose, but the
methods adopted by them, the manner in which these
methods were pursued and the conduct of the defend-
ants in the control and disposal of the funds received by

them for the companies in which they were active, subjects them to the imputation that the scheme was entered upon for the purpose of securing profit to themselves by devious and unlawful methods or if that were not the original design that it became their purpose as their plans were developed; and their motives and purposes are to be ascertained from their acts. It is apparent from the evidence that the appellant was not possessed of resources which enabled him to acquire the stock which he held in the finance and securities company and that he had no estate which justified the purchase of the large amount of stock for which he subscribed to the insurance company. It is true he explained his action with reference to this subscription by saying that he intended the stock to be held for the use of such persons as might thereafter be induced to take it to the end that they would be qualified to act as directors in the company, but he admits that he had no purchasers in immediate view and that the only method by which he could relieve himself of his obligation to the insurance company in the event that he failed to find subscribers for all or a large part of his stock was to have the finance and securities company take it off his hands. All of these subscriptions and manipulations of stock by the defendants and their coadjutors were made without the use of any cash. The appellant thought that his ownership of nearly $50,000 of the stock of the finance and securities company for which he had not paid a dollar in money was a sufficient asset to justify his subscription for the stock in the insurance company, but the jury evidently had a different view of the transaction and the history of the case does not lead us to the conclusion that they should be criticized for such action. One need only read the summary of the financial operations involved in the scheme as detailed by Miss Dunkle, the bookkeeper, to see that a different impression might be entertained as to the bona fides of the defendants than that which is asserted by

them.  A jury might well believe that a situation which was largely brought about by the appellant's conduct and which as he claimed put a large fund into his own possession was designed to do that very thing, to the loss of the bona fide subscribers to the stock of the insurance company.  We think it clear therefore that it was the duty of the learned trial judge to submit the case to the jury on the evidence presented.

Exception is taken in the first, second, third and fourth assignments to the admission of evidence.  We do not find in the case a sufficient justification for sustaining any one of them.  No one of the items of evidence was important by itself but when taken in connection with all of the other circumstances relating to the transaction we cannot say that the offers were inadmissible.  They were in any aspect of the case of inconsiderable consequence and could not have affected the judgment of the jury on the main question.  The court was not in error in rejecting the report of the committee as set forth in the fifth assignment.  That was a voluntary statement of persons selected by some of the subscribers to the stock of the proposed insurance company exhibiting the assets and liabilities as far as the project had been advanced, but this is not a controversy between contending stockholders nor between stockholders and the company.  The committee was not invested with authority to bind all of the subscribers to stock and the report was not conclusive on anyone.  The manner in which their examination was made and the evidence on which they acted were not disclosed in the paper submitted, and its introduction would have been nothing but the written declaration of the committee signing it as to what they believed the financial condition of the proposed company was.

The case was so fairly and clearly presented to the jury that there could have been no misapprehension in regard to the issue involved nor the bearing of the evidence on the contentions of the commonwealth

and the defendants. We regard the case as free from error.

The judgment is affirmed and the record is remitted to the court below with the direction that the judgment be carried into effect and to that end it is ordered that the defendant, Wm. J. Cotter, forthwith appear in that court and that he be committed to serve and comply with such part of his sentence as had not been performed at the time this appeal was made a supersedeas.